IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| G. W. ARU, LLC, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civ. No. JKB-22-2636 |
| W. R. GRACE & CO.-CONN., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiffs G. W. Aru, LLC and Cochise Technology, LLC have brought an action against Defendant W. R. Grace & Co.-Conn. alleging patent infringement in violation of 35 U.S.C. § 271(a) and false advertising in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). On May 12, 2023, Plaintiffs filed a Motion for a Preliminary Injunction, seeking to prevent Grace from making certain allegedly false statements relating to its carbon monoxide (CO) to carbon dioxide (CO2) combustion promoters. (ECF No. 41.) Attached to Plaintiffs' memorandum in support of its motion is the 123-page declaration of Guido W. Aru, the founder and CEO of Plaintiff G.W. Aru LLC ("Aru Declaration"). (Aru Decl. at ¶ 1, ECF 42-1 at 8.)

Pending before the Court is Defendant's Motion to Strike portions of the Aru Declaration on the grounds that they contain improper and inadmissible evidence. (ECF No. 55.) The motion is fully briefed and no hearing is required. *See* Local Rule 105(6) (D. Md. 2023). For the reasons discussed below, the Court will DENY the Motion to Strike.

**I.   LEGAL STANDARD**

A threshold issue is the proper standard for reviewing a motion to strike at the preliminary injunction stage. Defendant did not squarely address the issue in its initial motion. In its memorandum opposing the Motion to Strike, Plaintiffs argue that the Motion to Strike is governed by Federal Rule of Civil Procedure 12(f), which authorizes a Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). (ECF No. 62 at 3–4.) This argument is unavailing. The rule by its terms applies only to "pleading[s]," not other documents such as those connected to a motion for a preliminary injunction. Fed. R. Civ. P. 12(f). Although "some cases have held that Rule 12(f) may be used to strike documents other than pleadings, the weight of authority is that such an action is not contemplated or permitted by the Rules." *Anusie-Howard v. Todd*, 920 F. Supp. 2d 623, 627 (D. Md. 2013) (footnotes omitted), *aff'd*, 615 F. App'x 119 (4th Cir. 2015) (mem.). "That said, the United States Court of Appeals for the Fourth Circuit has recognized that district courts have inherent power to strike other types of documents for just cause[.]" *Gaskins v. Baltimore City Pub. Schs.*, Civ. No. JKB-15-2961, 2016 WL 192535, at *3 (D. Md. Jan. 15, 2016), *aff'd sub nom. Gaskins v. Abiodun*, 649 F. App'x 307 (4th Cir. 2016); *see also Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) ("Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." (Internal quotation marks omitted)). But "because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Thus, the Court will consider whether it finds it appropriate, in its discretion and in the context of a motion for preliminary injunction, to use its inherent power to strike the Aru Declaration.

As the Supreme Court has observed, "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Therefore, "[b]ecause preliminary injunction proceedings are informal ones designed to prevent irreparable harm before a later trial governed by the full rigor of usual evidentiary standards, district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted." *G.G. ex rel Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016), *vacated on other grounds, Gloucester Cnty. Sch. Bd. v. G.G.*, 137 S. Ct. 1239 (2017) (mem.); *see also* 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2949 (3d ed.) ("[I]nasmuch as the grant of a preliminary injunction is discretionary, the trial court should be allowed to give even inadmissible evidence some weight when it is thought advisable to do so[.]"). Because preliminary injunctions are governed by "less strict rules of evidence," the Fourth Circuit has held that it was reversible error for a district court to refuse to consider proffered evidence in support of a preliminary injunction motion solely on the grounds that the evidence would have been inadmissible at trial. *G.G.*, 822 F.3d at 726.

District courts in this circuit have held that defects in evidence offered in support of a preliminary injunction generally go to the weight of the evidence rather than whether the Court may consider it at all. Thus, some courts have decided to consider all proffered evidence and assign it whatever weight is appropriate under the circumstances. *See Hispanic Nat'l Law Enforcement Assoc. NCR v. Prince George's Cnty*, 535 F. Supp. 3d 393, 409–10 (D. Md. 2021)

3

(denying a motion to strike allegedly inadmissible declarations in support of a preliminary injunction motion); *Stone v. Trump*, 280 F. Supp. 3d 747, 767 (D. Md. 2017) (stating, in connection with a motion for preliminary injunction, that "[t]he weight to be accorded to affidavit testimony is within the discretion of the court, and statements based on belief rather than personal knowledge may be discounted"). Others, when presented with proffered *expert* testimony related to a preliminary injunction motion, have undertaken a "less formal review" of the testimony to see whether it contains the indicia of reliability that courts look for in serving their gatekeeper function under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). *See Defs. of Wildlife and S.C. Coastal Conservation League v. Boyle*, Civ. No. 2:22-112-RMG, 2023 WL 2770280, at *2 (D.S.C. Apr. 4, 2023). While the evidentiary rules are somewhat relaxed at this stage, courts have therefore found that Federal Rule of Evidence 702 and the line of cases under *Daubert* remain "useful guideposts" in determining what kinds of expert evidence are appropriate to consider in deciding on the motion. *St. Michael's Media Inc. v. Mayor and City Council of Baltimore*, 566 F. Supp. 3d 327, 353–56 (D. Md. 2021).

## II. ANALYSIS

In its memorandum in support of the Motion to Strike the Aru Declaration, Defendant argues that the Court should strike portions of the Aru Declaration in which: 1) Aru is offering expert opinion testimony that he is not qualified to give, 2) Aru is offering improper lay opinions without proper foundation, and 3) Aru is offering improper legal opinions. (ECF No. 55.) The Court will consider each of these arguments in turn.

### A. Aru's Expert Testimony

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . :

4

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, the Court has a "basic gatekeeping obligation," *Adell Plastics, Inc. v. Mt. Hawley Ins. Co.*, Civ. No. JKB-17-00252, 2019 WL 2524916, at *1 (D. Md. June 19, 2019), to ensure "that an expert's testimony both rests on reliable foundation and is relevant to the task at hand," *Daubert*, 509 U.S. at 597. The Court must determine whether the proffered testimony is "scientifically valid" based on factors such as testing, peer review, error rates, and whether the testimony is based on generally accepted principles. *Id.* at 592–95. However, the inquiry is "flexible" and no one factor is dispositive. *Id.* at 594; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). And, as discussed above, in the context of a motion for a preliminary injunction, the Court's review of the admissibility of expert testimony is "less formal." *St. Michael's Media*, 566 F. Supp. 3d at 353 (quoting *Parks v. City of Charlotte*, Civ. No. 3:17-00670-GCM, 2018 WL 4643193, at *4 (W.D. N.C. Sept. 27, 2018).

### 1. *The Parties' Positions*

Defendant argues that the Court should strike the technical portions of the Aru Declaration on the grounds that they are "expert testimony that rely on specialized skills in the relevant field beyond mere historical or narrative facts." (ECF No. 55 at 6.) Defendant points to the many instances in the Aru Declaration where Aru makes statements about technical aspects of the combustion promoter industry. An example that captures the highly technical nature of parts of the Aru Declaration is the following statement: "Afterburn specifically refers to the difference between the temperature in the catalyst bed in the regenerator (dense phase) and the top of the

5

regenerator vessel where very little catalyst exist, known as the dilute phase." (Aru Decl. at ¶ 43 n.2, ECF No. 42-1 at 22 n.2.) Because these statements are the kinds of statements that are not based on everyday personal knowledge but are rather grounded in "scientific, technical, or other specialized knowledge," Fed. R. Evid. 702, Defendant argues that Aru's statements are "expert testimony 'dressed up in lay witness clothing.'" (ECF No. 55 at 7–8 (quoting *United States v. Johnson*, 617 F.3d 286, 293 (4th Cir. 2010)).) Further, Defendant argues that Plaintiffs have failed to qualify Aru as an expert, because he has no degree in chemistry and his experience is primarily in the commercial and business management side of the industry. (ECF No. 55 at 10–11.)

In response, Plaintiffs argue that Aru's background qualifies him "as an expert in the sales, business, *and technical* aspects of the FCC [fluid catalytic cracking] additive industry." (ECF No. 62 at 10 (emphasis in original).) Plaintiffs state that Aru has been involved in the industry for nearly 30 years and "has published numerous papers and made many industry presentations on FCC additives." (*Id.* at 10–11.) Plaintiffs also note that Aru "is the sole named inventor on the asserted patent in this case, which is directed to an FCC CO promoter." (*Id.* at 11–12.) Plaintiffs have also attached a second declaration from Aru, in which he describes his relevant professional and educational background in greater detail. (*See generally* Second Aru Decl., ECF No. 61-1.)

### 2. *Analysis*

Here, the Court is satisfied that Aru's statements bear sufficient indicia of reliability to make it appropriate to consider the Aru Declaration for the purposes of the preliminary injunction. Aru has a Bachelor of Science degree in computer science and completed three years of undergraduate coursework in chemistry. (Aru Decl. at ¶ 4 (ECF No. 42-1 at 8)). Aru has worked in the FCC industry since 1994, nearly 30 years ago. (*Id.* at ¶ 2 (ECF No. 42-1 at 7). Although much of his professional experience is on the business and management side, he has also developed

software for analyzing FCC operating data and published an apparently well-regarded technical paper on FCC additives and complying with a consent decree relating to nitrogen oxide (NOx) emissions. (Second Aru Decl. at 3, ECF No. 61-1.) Finally, Aru is the sole inventor of the '864 patent at the heart of this case. (*Id.* at 6.) All these facts suggest that Aru can speak with reasonable credibility about technical aspects relating to the FCC additive industry. *See Templeton v. Bishop of Charleston*, No. 2:18-cv-02003-DCN, 2021 WL 3419442, at *3 (D.S.C. Aug. 5, 2021) (holding that a witness was qualified, on the basis of her extensive professional experience in the field, as an expert on the topic of repressed memory despite not holding a "specific academic degree" in psychology) (quoting *Arias v. DynCorp*, 928 F. Supp. 2d 10, 15 (D.D.C. 2013)).

Defendant argues that Plaintiffs fail to demonstrate that "Aru has any experience in researching, designing, or manufacturing FCC additives." (ECF No. 64 at 12.) Additionally, Defendant states that "[i]n the field of FCC additives, an expert would be expected to have at least a bachelor's degree in chemical engineering or related discipline and industry experience in researching or manufacturing of FCC additives or systems." (ECF No. 64 at 11.) Defendant's arguments would have some force were Plaintiffs seeking to introduce the statements from the Aru Declaration at trial. That said, Plaintiffs have adequately demonstrated that Aru's statements are sufficiently reliable for consideration at the preliminary injunction stage. Although Aru's case would certainly be bolstered if he had at least an undergraduate degree in chemistry, the Advisory Committee has noted that nothing in Rule 702 "is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony." Fed R. Evid 702, Advisory Comm. Notes to 2000 Amends.; *see also Young v. Swiney*, 23 F. Supp. 3d 596, 611 (D. Md. 2014) (noting that an expert may be qualified on the basis of experience alone). Here, the Court finds that Aru's extensive

industry experience, coupled with the fact that he has some relevant formal education, makes it appropriate for the Court to at least consider his statements to some extent at this point in the litigation.

In declining to strike Aru's technical statements, the Court emphasizes that it in no way makes a determination as to whether Plaintiffs have satisfied the requirements under Rule 702 and *Daubert* for qualifying Aru to testify as an expert at trial or for the purposes of a summary judgment motion. The Aru Declaration is long on technical detail but short on explanations as to how Aru's opinions and analyses are "the product of reliable principles and methods" applied reliably to the facts of the case. Fed. R. Evid. 702 (c)–(d). Furthermore, Aru is clearly highly motivated to have his company prevail in the litigation, so there is a heightened risk of his declaration being self-serving.[1] However, the Court in its discretion declines to invoke its inherent power to strike the Aru Declaration. Instead, the defects in the Aru Declaration go to the weight that the Court will give Aru's technical statements and analysis in deciding on Plaintiffs' Motion for a Preliminary Injunction. *See Parks*, 2018 WL 464319, at *4 (stating, in the context of a preliminary injunction, that a party's "*Daubert* arguments . . . are more instructive on the weight of the evidence rather than its admissibility at this procedural posture").

## B. Aru's Lay Witness Testimony

Defendant also moves to strike portions of the Aru Declaration on the grounds that much of the Declaration is not based on Aru's personal knowledge but is instead based on speculation or on reviewing documents in the lawsuit. In support of this argument, Defendant points to the

---

[1] Although Defendant does not press the issue, the Court observes that it is "remarkable" for a plaintiff to serve as his own expert witness. *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1042 (7th Cir. 1988). Nevertheless, evidence law contains no *per se* prohibition against this practice; instead, the factfinder will necessarily discount the weight given to the testimony on account of "so obvious a conflict of interest." *Id.*; *see also Patterson v. Santini*, Civ. No. 11-01899-RM-KLM, 2017 WL 11454838, at *3 (D. Colo. Mar. 20, 2017) (collecting cases).

fact that at many instances in the Declaration, Aru bases his opinions on his own review of documents produced during discovery. (ECF No. 64 at 10–11.)

It is true that at trial, a lay witness generally must base their opinion testimony on their own perception of the events of the case, not on their review of documents produced in litigation. *See* Fed. R. Evid. 602 (requiring lay witnesses to have "personal knowledge" of the matter about which they are testifying); *United States v. Hassan*, 742 F.3d 104, 135 (4th Cir. 2014) (explaining that a witness's opinion about another party's statement is admissible only if the "witness's understanding is predicated on his knowledge and participation in the conversation"). However, the posture in this case is somewhat unusual. Plaintiffs added their false advertising claims only *after* receiving Defendant's Answer, which they believe showed that Defendant was lying in its advertisements and representations to customers. (*See* First Amend. Compl. at ¶ 108–112, ECF No. 18 at 33–34.) If the Court were to refuse to consider facts that Plaintiffs learned from Defendant's judicial admissions and discovery documents, Plaintiffs would be hamstrung in their ability to present the claims they make in their Motion for a Preliminary Injunction. Furthermore, Defendant does not deny that the documents Aru discusses in his Declaration exist or argue that Aru is misstating what they say (although Defendant vehemently disagrees with the inferences Aru draws from these documents). Given the need for the speedy resolution of a preliminary injunction request, *see Camenisch*, 451 U.S. at 395, the Court will not strike the Aru declaration on the ground of lack of personal knowledge. To the extent that many of Aru's statements lack proper foundation, this issue will go toward the weight that the Court gives those statements.

Additionally, Defendant is correct to note that many parts of the Aru Declaration contain Aru's own unsubstantiated opinions. At times, Aru's statements amount to sheer speculation. (*See, e.g.,* Aru Decl. at ¶ 20 ("I believe it is reasonable to infer that Grace disseminated the same

false advertising and promotion materials to the rest of the very small purchasing public[.]")). These statements would probably not be admissible at trial. *See United States v. Perkins*, 470 F.3d 150 (4th Cir. 2006) (quoting *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir.1993) ("[S]peculative opinion testimony by lay witnesses—i.e., testimony not based upon the witness's perception—is generally considered inadmissible.")). In deciding on the preliminary injunction, the Court will give little to no weight to these statements, as they are minimally relevant or helpful to the Court in its role as factfinder. However, the Court declines to use its inherent authority to strike the statements.

## C. Aru's Legal Conclusions

Finally, Defendant argues that the Court should strike parts of the Aru Declaration because they contain improper legal opinions. (ECF No. 55 at 16.) Defendant provides several examples of instances in which Aru makes statements that strongly resemble legal conclusions or arguments rather than witness testimony. (*See, e.g.*, Aru Decl. at ¶ 19, ECF No. 42-1 at 14 ("I also document how Grace's false advertising and promotion was *material* to the purchasing decisions of our mutual customers and how Grace's unlawful false advertising and promotion caused *irreparable harm* to GWA's business[.]") (emphasis added).) Parts of the Declaration even appear to be structured like a legal brief, with headings for different elements that Plaintiffs must prove to establish their entitlement for relief. (*See id.* at 2.)

"[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006). Thus, were Aru testifying at trial, the Court would be unlikely to permit him to testify as to whether, for example, Defendant's alleged misstatements were material or caused his company irreparable harm. However, for the reasons discussed above, the Court declines to invoke its

10

inherent power to strike the Aru Declaration because it contains impermissible legal conclusions. Instead, the Court will simply give no weight to the portions of the Declaration which contain legal arguments or legal conclusions. In any event, Aru's legal conclusions largely mirror those stated in the Memorandum in Support of Plaintiffs' Motion for a Preliminary injunction. (*See generally* ECF No. 42.) In its review of the request for a preliminary injunction, the Court will consider Plaintiffs' legal arguments only insofar as they are appropriately presented by counsel.

A final word of caution to Plaintiffs: Although the Court will not grant the Motion to Strike the Aru Declaration, it notes that much of the Declaration reads like a legal brief. The Court reminds Plaintiffs that memoranda in support of a motion or in opposition thereto are not to exceed thirty pages unless this Court orders otherwise. Local Rule 105.3 (D. Md. 2023). The Court will not look like kindly on a party's future attempts to skirt the page limit by attaching lengthy declarations that do little more than expand on legal arguments made in the briefs.

## III. CONCLUSION

The Court finds that—while parts of the Aru Declaration are relevant and helpful to the Court in its factfinding role—other parts are either insufficiently supported, repetitive, argumentative, or not clearly relevant to the limited question of whether to grant the preliminary injunction Plaintiffs seek. However, these defects in the Aru Declaration do not warrant striking portions of the document, but instead go to the weight that the Court will give the Declaration in deciding on the preliminary injunction motion. Accordingly, a separate order will issue denying Defendant's Motion to Strike, ECF No. 55.[2]

---

[2] Because the Court is denying the Motion to Strike, it need not consider Plaintiffs' argument that the Aru Declaration would be alternatively admissible as a summary of voluminous records under Fed. R. Evid. 1006. (*See* ECF No. 62 at 16–18.)

DATED this 22 day of August, 2023.

BY THE COURT:

_____
James K. Bredar
Chief Judge