IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **G. W. ARU, LLC, et al.,** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civ. No. JKB-22-2636** |
| **W. R. GRACE & CO.-CONN.,** | * | |
| **Defendant.** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### MEMORANDUM

Pending before the Court is Plaintiffs G. W. Aru, LLC and Cochise Technology, LLC's Motion for Leave to File Second Amended Complaint (hereinafter Motion for Leave). (ECF No. 73.) The Motion is fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons discussed below, the Motion will be denied.

**I.    Background**

Plaintiffs and Defendant, W. R. Grace & Co.-Conn, are rivals and erstwhile collaborators in the petrochemicals industry. Plaintiffs filed their original Complaint in October 2022, alleging a single count of patent infringement in violation of 35 U.S.C. § 271(a). (ECF No. 1.) They alleged that Defendant, a large industrial concern whose business includes selling catalysts for petroleum refining, "dangled a potential business relationship with the vastly smaller Aru over a period between 2018 and 2022." (*Id.* at 2–3.) During this period, Plaintiffs shared with Defendant confidential business information. Then, in early 2022, after having learned all "the details of Aru's crown jewel technology and business case," Defendant allegedly cut ties with Plaintiffs and intentionally copied Plaintiffs' patented "eggshell" design for carbon monoxide (CO) to carbon dioxide ($CO_2$) combustion promoters. (ECF No. 1 at 3–5.) Combustion promoters are small

particles (much less than a millimeter in length or diameter) that are used in fluid catalytic cracking (FCC), a process for refining crude oil into higher value products such as gasoline. (ECF No. 18 at 6–9). As their name would suggest, combustion promoters promote the conversion of CO into $CO_2$, which is advantageous because too much CO in the FCC unit can lead to "afterburning," which can cause significant damage to the FCC equipment. *(Id.* at 6–8.) Combustion promoters consist of a porous support particle impregnated with Group VIII noble metals (typically platinum or palladium).[1] The noble metals are the active component that promotes the conversion of CO to $CO_2$. *(Id.)*

In the "eggshell" design featured in the patent-in-suit, the noble metal molecules are concentrated toward the surface of the combustion promoter particle, rather than being evenly distributed throughout the particle. (ECF No. 18 at 14.) The motivation behind this eggshell design is that it "greatly reduces the amount" of noble metals that must be added to the combustion promoters, which is advantageous because noble metals are "very expensive." *(Id.* at 9, 14)

Defendant answered the initial Complaint in December 2022. (ECF No. 15.) In its Answer, Defendant denied that its combustion promoters used an "eggshell" design and stated instead that at least one of its combustion promoters "is intended to have a uniform distribution of noble metal throughout the promoter." *(Id.* at 5.) Plaintiffs thought that this statement was at odds with Defendant's advertisements, which stated that Defendant's combustion promoters had "the majority of the [noble] metals . . . located at the surface" of the combustion promoter particle. (ECF No. 18 at 32.) Plaintiffs thus exercised their right to amend their complaint once as of right under Fed. R. Civ. P. 15(a)(1)(B) to add a claim for false advertising under Section 43(a) of the

---

[1] The parties agree that "Group VIII noble metals" refers to "a metal chosen from the group of platinum, palladium, iridium, ruthenium, and/or rhodium." (ECF No. 72 at 2.)

2

Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Plaintiffs filed their First Amended Complaint on January 12th, 2023 (ECF No. 18), and Defendant filed its Answer on the 26th (ECF No. 25).

Shortly after Plaintiffs filed their First Amended Complaint, the Court entered a Scheduling Order. (ECF No. 24.) That Order provided, inter alia, that the deadline for joinder of additional parties and amendment of pleadings was February 21, 2023. (*Id.* at 1.) Discovery is ongoing and will close in January 2024 (except for expert discovery, which will close in April 2024). (*Id.* at 2.)

On May 12, 2023, Plaintiffs filed a Motion for Preliminary Injunction asking the Court to enjoin Defendant's allegedly false advertising. (ECF No. 41.) The Court has deferred ruling on the Preliminary Injunction Motion because the proposed Second Amended Complaint also asserts a claim for injunctive relief. (*See* ECF No. 73-2 at 62.)

Finally, Plaintiffs filed the instant Motion for Leave on August 18, 2023. Plaintiffs seek to add a count of unfair competition under Maryland common law. (ECF No. 73 at 1.) This new claim is largely based on materials obtained during discovery, including communications that Defendant made with customers. However, the new claim also incorporates the allegations of false advertising that were raised in the Lanham Act count of the First Amended Complaint. (*Compare* ECF No. 18 at 34–38 *with* ECF No. 73-3 at 46–52) (both recounting allegedly false statements that Defendant made in a trade industry magazine and on its corporate blog). Defendant opposes the Motion for Leave, arguing (1) that Plaintiffs fail to show good cause for amending the First Amended Complaint and (2) that the proposed amendment is futile. (ECF No. 85.)

**II.   Legal Standard**

"A motion for leave to amend pleadings filed beyond the deadline set forth in the scheduling order will only be granted if it satisfies both the 'good cause' standard of Federal Rule

3

of Civil Procedure 16(b)(4) and the standard of Rule 15(a)(2) for allowing amendment of pleadings." *Timbers v. Telligent Masonry, LLC*, Civ. No. JKB-21-00293, 2022 WL 17541751, at *3 (D. Md. Dec. 8, 2022); *see also Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (stating that "after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings"). As the Fourth Circuit has explained:

> Rule 15(a)(2) articulates a relatively liberal amendment policy, in which leave to amend should be "freely give[n] when justice so requires." That rule applies, however, prior to the entry of a scheduling order, at which point, under Rule 16(b)(4), a party must first demonstrate "good cause" to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment.

*Cook v. Howard*, 484 F. App'x 805, 814–15 (4th Cir. 2012).

To satisfy the good cause standard, the party seeking to amend their complaint must show that the deadlines set forth in the scheduling order could not "reasonably be met despite the party's diligence." *Id.* at 815 (quoting 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1522.2); *see also Faulconer v. Centra Health*, 808 F. App'x 148, 152 n.1 (4th Cir. 2020) (noting that a finding of good cause under Rule 16 "depends on the diligence of the party seeking amendment" and collecting cases). The Court may consider "whether the moving party acted in good faith, the length of the delay and its effects, and whether the delay will prejudice the non-moving party." *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 520 (D. Md. 2014). Good cause generally exists "[w]hen 'at least some of the evidence needed for a plaintiff to prove his or her claim did not come to light until after the amendment deadline." *Wonasue v. Univ. of Md. Alumni Ass'n*, 295 F.R.D. 104, 107 (D. Md. 2013) (quoting *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768–69 (D. Md. 2010)). But good cause does not exist when "the moving party knew of

4

the underlying conduct giving rise to a claim but simply failed to raise it in an initial complaint." *Faulconer*, 808 F. App'x at 152.

If the Court finds good cause exists, it then applies the Rule 15(a) standard, which directs the Court to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Under the 15(a) standard, leave to amend should be denied only "(1) when the opposing party would be prejudiced; (2) when the amendment is sought in bad faith; or (3) when the proposed amendment would be futile." *Timbers*, 2022 WL 17541751, at *4 (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)).

## III. Analysis

Plaintiffs have not shown good cause for amending the scheduling order to permit them to file a Second Amended Complaint.

Plaintiffs argue that they are adding their new cause of action at this time because they only learned of the facts needed to bring the claim during discovery. (ECF No. 74 at 13–14.) They assert that "almost all of the evidence Plaintiffs rely upon to prove their new claim for unfair competition did not surface until well after the February 21, 2023, deadline to move for amendment of pleadings." (*Id.*) A review of the proposed Second Amended Complaint shows that Plaintiffs do indeed add a wealth of newly alleged facts in their proposed claim for unfair competition under Maryland common law. (*See* ECF No. 73-3 at 44–63.) These facts relate largely to Defendant's communications with individual customers, which Plaintiffs did not have access to at the time of the filing of the First Amended Complaint. (*Id.*) Plaintiffs' problem is—while they now have many more facts to support a common law unfair competition claim—they already had enough facts to plausibly allege such a claim when they filed their First Amended Complaint.

5

This is so because the scope of the tort of unfair competition under Maryland common law is extremely broad. "There are no specific elements required to establish unfair competition under Maryland law." *LSR, Inc. v. Satellite Restaurants Inc. Crabcake Factory USA*, Civ. No. SAG-17-CV-03722, 2020 WL 4903902, at *6 (D. Md. Aug. 20, 2020). Instead, "[w]hat constitutes unfair competition in a given case is governed by its own particular facts and circumstances." *Balt. Bedding Corp. v. Moses*, 34 A.2d 229, 237 (Md. 1943); *see also Aarow Elec. Sols. v. Tricore Sys, LLC*, Civ. No. JKB-22-2363, 2023 WL 6161897 (D. Md. Sept. 21, 2023) ("This Court has recognized that the Maryland Supreme Court 'has preserved a high degree of flexibility in the law of unfair competition.'") (quoting *Delmarva Sash & Door Co. of Md. v. Andersen Windows, Inc.*, 218 F. Supp. 2d 729, 733 (D. Md. 2002)). The underlying premise of the law of unfair competition is that "no one, especially a trader, is justified in damaging or jeopardizing another's business by fraud, deceit, trickery or unfair methods of any sort." *Balt. Bedding Corp.*, 34 A.2d at 237; *accord Thompson v. UBS Fin. Servs.*, 115 A.3d 125, 133 (Md. 2015).

Applying this broad standard, the Court readily concludes that the allegations forming the basis of Plaintiffs' Lanham Act claim as of January 2023 could have also formed the basis of an unfair competition claim under Maryland law. In the First Amended Complaint, Plaintiffs allege that Defendant either:

a. Copied Plaintiffs' then patent-pending technology in 2020 based on confidential disclosures provided by Aru . . . to make the eggshell-type CO combustion promoters advertised and promoted in Exhibit C and D; and/or

b. Merely substituted a cheaper alumina support material and arbitrarily reduced the amount of expensive palladium and/or platinum in their Optimized CP® products in order to compete against Aru's products and to deceive customers into believing that Grace's Optimized CP® products embodied the eggshell distribution of noble metals and would provide the benefits of improved CO to CO2 conversion performance and reduced NOx emissions from the eggshell distribution that Aru was successfully promoting in the industry.

6

(ECF No. 18 at 34.)

In essence, Plaintiffs' version of events is the following: Plaintiffs and Defendant entered into a joint marketing agreement in which Plaintiffs shared confidential information including their "crown jewel technology and business case." (ECF No. 18 at 3.) But when that relationship soured, "Grace intentionally copied Aru's patented inventions while publicly denigrating Aru's reliability in the marketplace. (*Id.*) Plaintiffs' theory of the case, as of the date of the filing of the First Amended Complaint, boils down to: Either Defendant copied our patented eggshell design (which is infringement), or Defendant is falsely claiming to have an eggshell-type combustion promoter like ours (which is false advertising). Plaintiffs further allege that Defendant's false advertisements deceived at least one major customer. (*Id.* at 38.) Whatever precise label one chooses to attach to these allegations, it would be hard to conclude that, if true, they would not constitute "unfair methods of any sort." *See Balt. Bedding Corp.*, 34 A.2d at 342; *see also Aarow*, 2023 WL 6161897, at *15 (holding that the plaintiff had sufficiently alleged unfair competition "given the flexibility of this cause of action"); *Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*, 905 F. Supp. 2d 675 (D. Md. 2012) (holding that plaintiff stated a claim for unfair competition even without alleging fraud or deceit "given the expansive definition of the Maryland tort"); *Trimmed Inc. v. Sherwood Med. Co.*, 977 F.2d 885, 891 (4th Cir. 1992) (affirming a district court's instructions that a jury could find unfair competition under Maryland law if the defendant took any actions to "exclude [the plaintiff] from the marketplace"). Indeed, several courts have implied that facts sufficient to make out a Lanham Act claim necessarily also suffice to state a claim for common law unfair competition. *See Impact Applications, Inc. v. Concussion Mgmt., LLC*, Civ. No. GJH-19-3108, 2021 WL 978823, at *8 (D. Md. Mar. 16, 2021) (stating that a party's "Lanham Act claim and state common law claim [for unfair competition] are evaluated under the same test")

(citing *Scotch Whisky Ass'n v. Majestic Distilling Co., Inc.*, 958 F.2d 594, 597 (4th Cir. 1992) (applying the same test for a party's Lanham Act claim and unfair competition under Maryland common law)); *Gorby v. Weiner*, Civ. No. TDC-13-3276, 2014 WL 4825962, at *6–7 (D. Md. Sept. 23, 2014) (same). Accordingly, Plaintiffs had sufficient facts needed to allege unfair competition under Maryland law at the time they filed their First Amended Complaint.

In short, Plaintiffs could have added a claim for common law unfair competition before the deadline for amending pleadings based on the facts at their disposal at the time, but they failed to do so. Because they "knew of the underlying conduct giving rise to" their claim for common law unfair competition "but simply failed to raise it" in their First Amended Complaint, *Faulconer*, 808 F. App'x at 152, Plaintiffs have failed to show good cause for amending the scheduling order. *See Rassoull v. Maximus*, 209 F.R.D. 372, 374 (D. Md. 2002) (stating that if a party was not diligent in seeking to amend the complaint, then under Rule 16(b) "the inquiry should end") (quotation omitted).

Further, Plaintiffs' cited cases are distinguishable. In *Estate of Bryant v. Baltimore Police*, the Court found good cause to allow the plaintiff to amend their complaint to add a claim alleging that one of the defendants, Baltimore Police Department analyst Barry Verger, wrongfully withheld exculpatory evidence from a criminal defendant. No. CV ELH-19-384, 2021 WL 1294133 (D. Md. Apr. 6, 2021). The Court found good cause existed because the amendment deadline was in July 2020 but it was not until August 28, 2020 that plaintiffs received even "the most basic documents related to the *Brady* claim against Analyst Verger." *Id.* at *5 (alterations omitted). Here, by contrast, Plaintiffs had all the facts they needed to state a claim for common law unfair competition in January 2023. To be sure, Plaintiffs have amassed much more evidence since the parties began discovery. This evidence has provided the factual predicate for more

alleged incidents, and perhaps more theories, of unfair competition than Plaintiffs could have alleged in January 2023. But the question is not whether Plaintiffs now have *more* evidence on which to ground a new claim than they had before, but whether they had *enough* evidence to make out that claim before the amendment deadline expired.

For similar reasons, *In re Lone Star Industries, Inc. Concrete R.R. Cross Tires Litigation*, on which Plaintiffs also rely, is inapposite. In that case "some of the evidence needed by Lone Star to prove its new Chapter 93A claim did not surface until after the amendment deadline," 19 F.3d 1429 (table), 1994 WL 118475, at *11 (4th Cir. 1994), whereas here Plaintiffs had sufficient evidence before the amendment deadline. And *Timbers* is distinguishable because in that case the plaintiff sought only "relatively minor amendments" to add newly uncovered factual allegations to existing causes of action, and did "not propose any new causes of action." 2022 WL 17541751, at *8. Finally, Plaintiffs cite to *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006), for the proposition that "[d]elay alone . . . is an insufficient reason to deny the plaintiff's motion to amend." But Plaintiffs' reliance on *Laber* is misplaced because the *Laber* court was referring to the standard for granting leave to amend under Rule 15(a), rather than the good cause standard of Rule 16(b). *See id.* at 426–27 & n.23 (noting that the defendant did not raise the issue of whether the good cause standard under Rule 16(b) applied and that the court "therefore [did] not consider the issue").

Because the Court finds that Plaintiffs failed to show good cause under Rule 16(b) for amending the scheduling order, the Court does not reach the question of whether Plaintiffs satisfy the Rule 15(a)(2) standard for granting leave to amend. *See Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 589 (D. Md. 2018) ("[W]hen a movant fails to satisfy Rule 16(b), the court need not consider Rule 15(a).").

## IV. Conclusion

For the reasons stated above, the Court will deny Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 73). A separate order will issue.

DATED this 30th day of October, 2023.

BY THE COURT:

/S/ JAMES K. BREDAR

James K. Bredar
Chief Judge